UNITED STATES of America, Appellee,

v.

Cleora KING, Appellant.

UNITED STATES of America, Appellee,

v.

Milton LEWIS, Appellant.

Nos. 77–1352, 77–1440.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1977.

Decided Dec. 12, 1977.

James P. Flannery, St. Paul, Minn., for Cleora King.

John R. Wylde, St. Paul, Minn., for Milton Lewis.

John M. Lee, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Andrew W. Danielson, U. S. Atty., Minneapolis, Minn., William Zwart, Intern, on the brief.

Before STEPHENSON, Circuit Judge, MARKEY, Chief Judge,\* and WEBSTER, Circuit Judge.

WEBSTER, Circuit Judge.

This is a consolidated appeal by Cleora Olive King and Milton Lewis, who were convicted in a joint trial with Cleora's sister, Edgrean King, on various narcotic charges contained in a single indictment.[1]

Each appellant asserts separate grounds for reversal of the respective convictions. Lewis contends that (1) Counts I and II were prejudicially misjoined and the District Court erred in not granting him severance for trial on all counts; and (2) the District Court erroneously denied his motion to suppress because the affidavit upon which the search warrant was based was

---

\* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. The indictment was in six counts. Count I charged Edgrean King, who is not before the court on this appeal, with distributing heroin on August 25, 1976, in violation of 21 U.S.C. § 841(a)(1). Counts III and IV charged Cleora Olive King and Milton Lewis with distribution of heroin on November 17, 1976 and November 19, 1976, respectively. Count V charged Milton Lewis with possession of cocaine with intent to distribute on November 19, 1976, also in violation of 21 U.S.C. § 841(a)(1). Count VI charged Milton Lewis with possession of heroin on November 19, 1976, in violation of 21 U.S.C. § 844. Lewis was convicted on Count V of the lesser included offense of possession; the defendants were convicted of all other counts as charged. Cleora King was sentenced to a general term of three years to be followed by three years on special parole; Lewis was sentenced to a general term of eight years on Counts II, III and IV, and a one-year general sentence on Counts V and VI, to be served concurrently with the eight-year sentence, followed by a five-year special parole term.

insufficient to establish probable cause and contained prejudicial misstatements. Cleora King contends that (1) the government's case was tainted by the use of a paid informant who was a known narcotics user; (2) the District Court erred in refusing to give a lesser included offense instruction on the counts in which she was charged; and (3) the District Court erred in refusing to grant her motion for severance and separate trials. We reject all contentions of appellants and affirm the judgments of conviction.

The facts are largely uncontroverted. Government undercover agent Hessel, working closely with informant Red Adams, purchased heroin on four separate occasions. In each sale either Edgrean King or her sister, Cleora King, after receiving money from Hessel and Adams, entered an apartment building at 177 Milton in Saint Paul, Minnesota, in which Milton Lewis lived, and obtained heroin.[2] On November 19, Agents Shanley, Long, and Bauer acting pursuant to a warrant, searched Lewis' apartment. In addition to drugs, additives, and other paraphernalia, the agents seized $580 of bills that Hessel had previously photocopied and given to Cleora King. An additional $1700 was seized. At the completion of their search, Lewis was asked if the money was his. He replied, "Yes, everything is."

We turn now to the assignments of error by each appellant.

## MILTON LEWIS

*Severance.*

Milton Lewis alleges that the District Court's failure to sever Counts I and II of the indictment prejudiced his right to a fair trial. His pretrial motion for relief from prejudicial joinder was denied first by the United States Magistrate and then by the District Court.[3] In Count I, Edgrean King was charged alone with unlawful distribution on August 25, 1976. Milton Lewis and Edgrean King were both charged in Count II with unlawful distribution in connection with the September 20, 1976 sale. Appellant contends, in support of misjoinder, that the government's case against him in Count II was so weak that he would not have been convicted had the government not offered evidence in its prosecution of Edgrean King under Count I.

Fed.R.Crim.P. 8(a) provides:

Two or more offenses may be charged in the same indictment . . . in a

[2.] In the August 25 sale, Adams and Hessell drove Edgrean King from a tavern to a street corner located near Lewis' apartment building. After giving her $125, Hessel and Adams waited approximately ten minutes until she returned with 1.42 grams of heroin.

On September 20, Hessel and Adams drove Edgrean King from her apartment to the same street corner. They gave her $650 and waited for her return. Police officer Boulger testified that he saw Edgrean King enter Lewis' apartment building on this date. Edgrean King returned without the heroin, claiming that it was not ready. Later in the day, however, Edgrean King, Agent Hessel, and Adams returned to the vicinity of Lewis' apartment and she was able to obtain 3.90 grams of heroin.

On November 17, Adams and Hessel drove to Edgrean King's apartment, but she was not at home. Instead, her sister, Cleora King, offered her assistance. She told Hessel and Adams that she could obtain some "stuff" from "Cut", the name by which Lewis was known. They drove to the same street corner, and Hessel and Adams handed her $650 in bills that had previously been photocopied. She entered Lewis' apartment building at 177 Milton. Lewis had been seen entering the building 10 minutes earlier. After a ten minute wait, she returned with 6.37 grams of heroin. Cleora told Hessel and Adams that she would be able to obtain more heroin the next day. Hessel and Adams then drove her home. Later that day, and the next, Cleora King spoke to Hessel and Adams on the telephone. These conversations which were recorded, were played to the jury at trial.

The November 19 sale took place in a similar way. Hessel drove Cleora King from her apartment to a spot near Lewis' apartment building. After giving her $650 in bills that had been previously photostated, she approached the building. Agent Long testified that he observed Cleora King retrieve something that had been thrown from Lewis' window. Agent Bauer testified that he saw Miss King go to the front of the building and pause before opening the door and entering. Hessel waited a short while until Miss King returned with 6.12 grams of heroin.

[3.] The Honorable Donald D. Alsop, United States District Court for the District of Minnesota.

separate count for each offense if the offenses charged . . . are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Even if joinder is proper under Rule 8, Fed.R.Crim.P. 14 authorizes the trial court to grant relief from joinder "[i]f it appears that a defendant or the government is prejudiced by [the] joinder . . . ." The court "may order . . . separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." *See United States v. Sanders,* 563 F.2d 379, at 382 (8th Cir. 1977). A district court in determining whether to grant relief under Rule 14 has wide discretion and the court's ruling is rarely disturbed on review. *See United States v. Jardan,* 552 F.2d 216, 219 (8th Cir.), *cert. denied,* 433 U.S. 912, 97 S.Ct. 2982, 53 L.Ed.2d 1097 (1977); *United States v. Kirk,* 534 F.2d 1262, 1269 (8th Cir. 1976), *cert. denied,* 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977).

■ The counts contained in the indictment show no facial misjoinder. The transactions and events occurred over a short period of time, were similarly carried out, and the evidence necessarily overlapped. *See Johnson v. United States,* 356 F.2d 680, 682 (8th Cir.), *cert. denied,* 385 U.S. 857, 87 S.Ct. 105, 17 L.Ed.2d 84 (1966). *See also United States v. Leach,* 429 F.2d 956, 960 (8th Cir. 1970), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971) (when conduct supporting various counts is factually related, charges may be joined even though defendants are not charged on each count or are guilty of the same offenses.)[4]

Likewise, we find little basis for Lewis' contention that the District Court should have granted severance under Fed.R. Crim.P. 14. Lewis contends that the government's evidence was so weak on Count II that he would not have been convicted had he been tried separately. Appellant must carry the heavy burden of demonstrating that he was prejudiced by the District Court's failure to grant relief. *See United States v. Jardan, supra,* 552 F.2d at 219. The government's evidence on Count II was sufficient to support a conviction.[5] We decline to speculate on what impact the evidence on Count I had on Lewis' conviction. There was abundant evidence of other similar criminal activity derived from Counts III, IV, V, and VI in which Edgrean King was not charged, which could fairly be considered by the jury as proof of plan, knowledge, and identity. *See* Fed.R.Evid. 404(b).

### The Search Warrant.

■ Lewis also contends that the affidavit upon which the November 19 search of his apartment was based did not contain sufficient allegations to establish probable cause, and contained misstatements, thus rendering the warrant invalid and the search improper. Basically, Lewis argues that: (1) the failure of the affidavit to disclose that another narcotics user, one Wofford, resided at 177 Milton was a material omission; (2) the affidavit contained inaccuracies and was inconsistent with evidence later introduced at trial; and (3) it impermissibly relied on informant Adams. The government, in support of the affidavit, relies on Cleora King's statements to Hessel, the affiant, on November 17 that she had gotten the heroin from "Cut" and that she would be able to obtain more from him the next day. The evidence is clear that Lewis was commonly known as "Cut". It was not necessary that the affidavit ex-

---

4. Lewis' reliance on *United States v. Whitehead,* 539 F.2d 1023 (4th Cir. 1976), is misplaced. In that case, the only relationship between the joint defendants was that they lived in the same apartment building. While the evidence showed that both defendants had dealt with a common third party, the government failed to prove that the defendants even knew each other. *Id.* at 1024–25. Here, on the other hand, Lewis was the central figure. He participated in narcotics sales with both King sisters.

5. *See* note 2 *supra.*

clude every possible alternative source of the heroin. The test is whether the affidavit was sufficient to support a finding of probable cause to believe that narcotics were located in Lewis' residence. We think that it was. Evidence of Wofford was irrelevant to a finding of probable cause in connection with the distributions made on November 17 and 19.

■ Appellant also claims that Agent Boulger's testimony was inconsistent with statements made by affiant Hessel in the affidavit describing Adams' account of his telephone conversation with Cleora King. Appellant concedes that mere discrepancies between information contained in an affidavit and evidence introduced at trial will not invalidate a search warrant issued pursuant to the affidavit. *See United States v. Marihart,* 492 F.2d 897, 901 (8th Cir.), *cert. denied,* 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974). Even when a government agent's statements are untruthful, "[e]vidence should not be suppressed unless the trial court finds that the government agent was either recklessly or intentionally untruthful." *Id.* at 899, *citing United States v. Carmichael,* 489 F.2d 983, 988 (7th Cir. 1973). *See also United States v. Luciow,* 518 F.2d 298, 301 (8th Cir. 1975). There is no basis for such a finding.

Finally, we find no impermissible reliance on Adams. Although affiant Hessel relied to some extent on Adams, an unidentified informant, Hessel was an active participant in all of the transactions upon which the affidavit was based and had "personal knowledge of the matters contained therein." *See Aguilar v. Texas,* 378 U.S. 108, 113, 84 S.Ct. 1509, 1513, 12 L.Ed.2d 723 (1963).

## CLEORA KING

*Use of the Informant.*

■ Cleora King argues that the District Court should have exercised its supervisory power to exclude evidence obtained from the participation of informant "Red" Adams. She claims that Adams, a well-known narcotics user was inherently unreliable because he was paid on a contingent fee basis.

Despite Adams' status as a narcotics user, he had been reliable in the past and on many occasions had introduced government agents to narcotics distributors and assisted in their arrest. In this case, Adams successfully introduced agent Hessel to the King sisters and played a vital role in the narcotics sales that lead to the eventual search of Lewis' apartment and appellants' arrest.

In *Williamson v. United States,* 311 F.2d 441 (5th Cir. 1962), *cert. denied,* 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 724 (1965), relied upon by appellant King, the Fifth Circuit, exercising its supervisory power, overturned a contingent fee arrangement in which an informer was paid to produce evidence against named individuals for crimes that had not yet been committed. The Court reasoned:

> Such an arrangement might tend to a "frame up," or to cause an informer to induce or persuade innocent persons to commit crimes they had no previous intent or purpose to commit.

*Id.* at 444. Adams was not approached and financially induced to "uncover evidence" against appellants, *see United States v. Masri,* 547 F.2d 932, 937 (5th Cir.), *cert. denied,* —— U.S. ——, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977). Rather, he merely introduced agent Hessel to the King sisters and facilitated the resulting narcotics sales.

The record does not directly support appellant's allegation that Adams was compensated on a contingent basis. The testimony only reveals that Adams was paid on the basis of the services he performed. This has been held not to be an impermissible fee arrangement under *Williamson, supra. United States v. Jett,* 491 F.2d 1078, 1081 (1st Cir. 1974); *Heard v. United States,* 414 F.2d 884, 886 (5th Cir. 1969); *cf. United States v. Librach,* 536 F.2d 1228, 1231 (8th Cir.), *cert. denied,* 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976) (refusing to

suppress testimony merely because government witness and his family received support payments while the witness was in protective custody).[6]

Here, Adams merely assisted agent Hessel in purchasing narcotics, and did not handle the drugs. Moreover, Cleora King's conviction did not rest on Adams' sole participation or testimony. In fact, Adams did not even testify. The evidence of guilt was overwhelming. We find no error here.

*Lesser Included Offense Instruction.*

Next, Cleora King, who was convicted of unlawful narcotics distributions in violation of 21 U.S.C. § 841(a), contends that the District Court erred in refusing her request for an instruction on the lesser-included offense of narcotics possession under 21 U.S.C. § 844(a).[7]

This Court has held that a defendant is entitled to a lesser-included offense instruction when the following five elements are present: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence that would justify conviction of the lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser-included offense; and (5) there is mutuality, *i. e.,* a charge may be demanded by either the United States or the defense. *United States v. Thompson,* 492 F.2d 359, 362 (8th Cir. 1974).

■ It does not follow that a lesser included offense instruction is mandatory every time a lesser offense is included within the offense charged in the indictment. The instruction need not be given when "from the evidence adduced at the trial there is no rational basis upon which the jury could find the defendant guilty of the lesser offense." *United States v. Klugman,* 506 F.2d 1378, 1380 (8th Cir. 1974); *see United States v. Rucker,* 496 F.2d 1241, 1243–44 (8th Cir.), *cert. denied,* 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 181 (1974). This is such a case.

■ King's contention that, as a mere conduit, with no expectation of profit, she lacked the requisite statutory intent necessary to convict for knowing and intentional distribution under 21 U.S.C. § 841(a) is without merit. Under 21 U.S.C. § 802(11), distribution occurs upon "delivery". A controlled substance is delivered when it is

---

**6.** *Williamson* has not gone without criticism, *see Comment,* 49 Va.L.Rev. 1021, 1024–25 (1963). We note that at least one court, rejecting *Williamson* altogether, has approved such an arrangement. *United States v. Grimes,* 438 F.2d 391, 394–95 (6th Cir.), *cert. denied,* 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685 (1971). Some courts have upheld contingent compensation schemes that have lead to the arrest of a suspect, *see United States v. Ladley,* 517 F.2d 1190, 1193 (9th Cir. 1975); *United States v. Cuomo,* 479 F.2d 688, 692 (2d Cir.), *cert. denied,* 414 U.S. 1002, 94 S.Ct. 357, 38 L.Ed.2d 238 (1973). It has been intimated, however, that in order to avoid government subsidation of perjury, a different conclusion might result if a contingent fee were offered for testimony or other activities leading to a defendant's conviction. *United States v. Ladley, supra,* 517 F.2d at 1193. The Fifth Circuit has narrowed *Williamson* and has permitted contingent fee arrangements when the government had reasonable cause to believe that an appellant had engaged in unlawful activity. *See Hill v. United States,* 328 F.2d 988, 988–89 (5th Cir.), *cert. denied,* 379 U.S. 851, 85 S.Ct. 94, 13 L.Ed.2d 54 (1964). In view of our holding, we need not draw the line in this case.

**7.** Section 841 prohibits unlawful and intentional narcotics distribution and provides in part:

§ 841. Prohibited acts A—Unlawful acts
  (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
    (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

Section 844 penalizes simple narcotics possession and provides in part:

§ 844. Penalty for simple possession; conditional discharge and expunging of records for first offense
  (a) It shall be unlawful for any person knowingly or intentionally to possess a controlled substance  .  .  ..

"transferred", whether the transfer is actual, constructive, or attempted, and whether or not there exists an agency relationship. 21 U.S.C. § 802(8). In short, one makes a knowing and intelligent distribution under 21 U.S.C. § 801(a) when he knowingly and intelligently transfers the controlled substance. Appellant does not contend, nor on the basis of the evidence could she, that she did not knowingly and intelligently transfer the heroin. Thus, to argue that the jury could convict Cleora King of the lesser offense of possession on these facts, would be to ignore the undisputed evidence of actual distribution. *See United States v. Klugman, supra,* 506 F.2d at 1381. The District Court did not err in refusing to charge the jury with the lesser-included offense of possession.

*Severance and Separate Trial.*

■ We reject Cleora King's final contention that the District Court improperly denied her motion for severance and a separate trial. The evidence supporting Cleora King's participation in the November 17 and 19 sales together with her recorded telephone statements was substantial. Moreover, she does not allege "real prejudice," which is requisite to relief under Fed. R.Crim.P. 14. *See United States v. Kirk, supra,* 534 F.2d at 1269. On this record, we are convinced that the District Court did not abuse its discretion. *See United States v. Graham,* 548 F.2d 1302, 1310–11 (8th Cir. 1977).

Affirmed.