UNITED STATES of America, Appellee,

v.

Steven Elmer LUSCHEN, Appellant.

UNITED STATES of America, Appellee,

v.

Wayne Bernard KING, Appellant.

Nos. 79–1384, 79–1392.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1979.

Decided Feb. 5, 1980.

Rehearing Denied March 4, 1980.

Louis D. Bass, Minneapolis, Minn., for appellant, Luschen; John L. Holahan, Jr., Minneapolis, Minn., on the brief.

Phillip S. Resnick, Meshbesher, Singer, & Spence, Minneapolis, Minn., for appellant, King; Kenneth Meshbesher, Minneapolis, Minn., on the brief.

James A. Morrow, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Thorwald H. Anderson, Jr., U. S. Atty. and Susan K. Savela, Legal Intern, Minneapolis, Minn., on brief in No. 79–1384; Thorwald H. Anderson, Jr., U. S. Atty. and Raymond R. Peterson, Legal Intern, Minneapolis, Minn., on brief in No. 79–1392.

Before STEPHENSON and McMILLIAN, Circuit Judges, and HANSON,* Senior District Judge.

* The Honorable William C. Hanson, United States Senior District Judge for the Southern District of Iowa, sitting by designation.

McMILLIAN, Circuit Judge.

Appellants Steven Elmer Luschen and Wayne Bernard King were charged in a four-count indictment with distribution of cocaine and conspiracy to distribute cocaine. They were joined as defendants and tried in U.S. District Court[1] before a jury, which found Luschen guilty of counts I–IV and King guilty of counts II–IV. On appeal Luschen alleges several errors relating to the chemical testing of the cocaine and challenges the sufficiency of the evidence to establish conspiracy. On appeal King cites as error illegal search and seizure, insufficiency of the evidence, admission of co-conspirator's statements, expert testimony interpreting a drug notebook and denial of severance. For the reasons discussed below, we affirm both convictions.

This case involves three hand-to-hand sales of cocaine from appellant Steven Luschen to Drug Enforcement Administration (DEA) undercover agent Susan Belkair. On September 5, 1978, agent Belkair, working with government informant Michael Harris, set up a cocaine buy with Luschen. Luschen was followed after leaving his home at 8812 Chowen Avenue South by two officers of the surveillance team with the Minneapolis Police Department Narcotics Division. Luschen spent twenty to twenty-five minutes at 2038 Montreal Avenue in St. Paul. He then proceeded to Mr. Nibbs, a local restaurant, where the buy was scheduled to occur, and sold one-half of an ounce of cocaine for $1,000 to agent Belkair.

On September 12, 1978, Harris and agent Belkair arranged to meet Luschen at Perkins Pancake House in Bloomington to discuss another transaction. Luschen instructed them to proceed to a phone booth in a church parking lot, which he said was across the street from where the cocaine was located, and he would call them when the cocaine was ready. Luschen left Perkins Pancake House and went directly to appellant Wayne King's apartment building at 8851 Goodrich Avenue South, across the street from the church lot. While he was in the building, his actions were observed by Officer Stone who had obtained a security key from the apartment manager. Luschen was escorted into apartment 206, King's apartment, by a young woman. After a short time, Luschen left King's apartment and drove to the church lot. He met Harris and agent Belkair in the rear of the church parking lot and sold one ounce of cocaine to agent Belkair for $2,100. After the sale, Luschen was followed to 2038 Montreal Avenue in St. Paul and then to Luschen's home.

On December 13, 1978, agent Belkair arranged to purchase one ounce of cocaine for $2,100 at 6 p. m. at Perkins Pancake House. At about 5:20 p. m., King arrived at Luschen's home. They left together at 5:45 p. m., and King drove Luschen to King's apartment. Again they were observed by Officer Stone. Just after they entered, two persons, later identified as Dale Casper and Cynthia Kissner, also entered King's apartment. Fifteen minutes later, King drove Luschen to Perkins Pancake House. King dropped Luschen off and parked with his hood up at a nearby gas station. Luschen got into agent Belkair's car, delivered one ounce of cocaine and received $2,100 in return. The surveillance officers approached the car and arrested Luschen. King was also arrested at the service station. After the arrests, a search revealed a package of pure cocaine on Luschen and drug paraphernalia consisting of two paper bindles, a razor blade and a straw used to snort cocaine on King.

After the arrest, a search warrant was obtained for King's apartment. The search, on December 13, 1978, revealed numerous articles commonly associated with drug dealers: an Ohaus triple beam balance scale, four bottles containing traces of cocaine plus inositol, one bottle containing only inositol, a SnoSeal containing traces of cocaine, a cutting mirror, a razor blade, plastic tubes and plastic bags, small plastic snorting spoons, a money order receipt in the name of Wayne King, a letter to Wayne King, a bank statement in the name of

---

1. The Honorable Miles W. Lord, United States District Judge for the District of Minnesota.

Wayne King, a blank check in the name of Wayne King, a newspaper clipping about a cocaine arrest and a notebook containing coded entries regarding drug transactions. The above items were all found in or on the night stand next to the double bed in the bedroom. In the closet with King's clothes was an empty pack of Marlboro cigarettes containing paper packets with traces of cocaine and inositol and a spoon and jar for snorting cocaine. King's girlfriend, who was present during the search, specifically denied being the owner of the Marlboro pack.

On January 12, 1979, the United States Grand Jury returned a four-count indictment charging appellants with distribution of cocaine and conspiracy to distribute cocaine. The counts were as follows:

Count I Steven Elmer Luschen—distribution, September 6, 1978, one-half ounce of cocaine;

Count II Steven Elmer Luschen and Wayne Bernard King, each aiding each other—distribution, September 12, 1978, one ounce of cocaine;

Count III Steven Elmer Luschen and Wayne Bernard King, each aiding each other—distribution, December 13, 1978, one ounce of cocaine;

Count IV Steven Elmer Luschen and Wayne Bernard King—Conspiracy to distribute cocaine on September 12, 1978, to December 13, 1978.

After a jury trial, Luschen was convicted on counts I, II, III and IV and sentenced to a term of three years plus a special parole term of three years. King was convicted on counts II, III and IV and sentenced to a term of eight years plus a special parole term of three years.

On appeal Luschen argues that there were four errors relating to the identification of the cocaine: First, the trial court erred in giving the instruction that, if the substance was not 1-cocaine, there was no offense. Second, the trial court erred in denying Luschen's motion for a post-trial hearing on the reliability of the gold chloride microcrystalline test. Third, the trial court erred in admitting testimony on the physical and chemical analysis without proper foundation on either the chemist's qualifications or the test's conformity to a generally accepted explanatory theory. And, fourth, the trial court erred in allowing the government to reopen its rebuttal and present additional testing procedures after Luschen had rested. Because of the common origin of these contentions, a review of that part of the evidence may be helpful.

Dawn Speier, a public health chemist for the City of Minneapolis, testified that she conducted five tests each on Exhibits 4, 9 and 12, which represented the substances purchased in the first, second and third buys respectively. The first four tests were to determine the presence of cocaine. The final test, a gold chloride microcrystalline test, was used to distinguish the 1 and d isomers. It was Speier's expert opinion that the gold chloride microcrystalline test was adequate to distinguish the 1 and d isomers. According to her testimony, the substances from all three buys contained 1-cocaine and inositol. She also testified that 1-cocaine and d-cocaine are not chemically equivalent. On cross examination it was revealed that Ms. Speier was only vaguely familiar with the polarimeter and melting point tests which are used to distinguish the 1 and d isomers. Then Luschen called to the stand Dr. Siret Ener, whose expert testimony was that the gold microcrystalline test could not differentiate 1-cocaine from d-cocaine.

After both sides had rested, Luschen moved for a directed verdict of acquittal, which was denied by the court. Over Luschen's objections, the court granted the government's motion to reopen its rebuttal so that it might run the melting point and polarimeter tests and present the results as evidence. The government's Exhibits 4, 9 and 12 were retested by Ms. Speier using a melting point test and found to be 1-cocaine. The polarimeter test was run on Exhibit 12 by T. Dal Lason, and in his opinion the sample was 1-cocaine.

Luschen's first contention, that the trial court erred in giving an instruction which shifted the burden to the accused to disprove an element of the crime, is not preserved for review because Luschen failed to object.[2] Fed.R.Crim.P. 30. *United States v. Collins,* 552 F.2d 243, 246 (8th Cir.), *cert. denied,* 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977); *Armstrong v. United States,* 228 F.2d 764, 766–68 (8th Cir.), *cert. denied,* 351 U.S. 918, 76 S.Ct. 710, 100 L.Ed. 1450 (1956).

Luschen's second contention is that the trial court erred in admitting various expert testimony that the substance was l-cocaine. As to the gold chloride microcrystalline test, Luschen charges that the government failed to establish its conformity to a generally accepted explanatory theory.[3] As to the melting point test, Luschen challenges the government chemist's qualifications to perform it. At base, however, both suggestions relate to the qualifications of the chemist.

The broad and generally stated test for determining the qualifications of a given witness to testify as an expert is whether his knowledge of the subject matter is such that his opinion will most likely assist the trier of fact in arriving at the truth. The determination of the preliminary question is left to the broad discretion of the trial court and while its resolution will not ordinarily be disturbed, it is not inviolate and may be reversed if this court is convinced that it was "manifestly erroneous" and a clear abuse of discretion. *Holmgren v. Massey-Ferguson, Inc.,* 516 F.2d 856, 857–58 (8th Cir. 1975) (citations omitted).

The government laid an adequate foundation regarding the expert's qualifications. She testified as to her educational background and her eighteen-year career as a public health chemist, in which she has analyzed controlled substances for drug enforcement authorities and has testified at hundreds of trials. In addition, she explained in detail the tests she performed, her observations, and her opinion based upon the results. The trial court properly allowed her to testify. Her testimony that in her opinion the gold chloride microcrystalline test could distinguish l-cocaine from d-cocaine was countered by appellant's expert's testimony that in his opinion it could

2. Luschen presents a novel argument had the issue been properly preserved for review. He contends that the trial court's instructions impermissibly shifted the burden of proof from the government to the appellant. The court instructed in part: "If you find that it is not l-cocaine beyond a reasonable doubt, then there is no offense at all." These instructions are unnecessarily confusing. In the future, instructions should be fashioned similar to those found in two Seventh Circuit opinions. These cases clearly establish that the burden is on the government to prove that the tests conducted are capable of distinguishing between l-cocaine and d-cocaine. In *United States v. Umentum,* 547 F.2d 987, 992 n.3 (7th Cir. 1976), *cert. denied,* 430 U.S. 983, 97 S.Ct. 1677, 52 L.Ed.2d 376 (1977), the trial court instructed that the government first must prove

    beyond a reasonable doubt that the substance is a derivative of coca leaves [and second must] prove beyond a reasonable doubt that the substance is chemically equivalent or identical to a derivative of coca leaves. You may not speculate as to the identity of the substance. If you have a reasonable doubt that the substance tested by the Government chemist is a form of cocaine covered by the statute, you must find the

defendants not guilty of Count II. Similarly, if all that the Government has proved is that the substance is cocaine without proving that it is either a derivative of coca leaves or a substance chemically equivalent or identical to such derivatives, then the Government has not proven its case as to Count II.

*See United States v. Orzechowski,* 547 F.2d 978, 980–81, 983 n.4 (7th Cir. 1976), *cert. denied,* 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977).

3. As authority for this point, appellant cites *United States v. Green,* 548 F.2d 1261, 1268 (6th Cir. 1977), in which the Sixth Circuit joined the Ninth Circuit in finding Rule 702 of the Federal Rules of Evidence "deficient" when applied to criminal cases and in adopting four criteria for review of trial court decisions concerning expert testimony: (1) qualified expert; (2) proper subject; (3) generally accepted explanatory theory; and (4) probative value. This circuit has not adopted those criteria, nor do we need to consider them here. The testimony on the results of the chemical testing here is easily distinguishable from the irrelevant and prejudicial dissertations on the "evil properties" of the drug in *Green.*

not (although he had never tried to run one). The weight and sufficiency of her testimony, once received, rested entirely with the jury. *United States v. Vitale*, 549 F.2d 71, 73 (8th Cir.), *cert. denied*, 431 U.S. 907, 97 S.Ct. 1704, 52 L.Ed.2d 393 (1977); *United States v. Burden*, 497 F.2d 385, 387 (8th Cir. 1974). Furthermore, Luschen neither objected to her testimony about the melting point tests nor cross-examined her about her conclusion that the three substances sold to Officer Belkair were l-cocaine. This contention is without merit.

■ Luschen's third contention is that the trial court erred in denying his motion for a post-trial hearing on the reliability of the gold chloride microcrystalline test. This is a rehash of the previous contention. Luschen concedes that conflicting expert testimony is admissible and that the jury decides how much weight to accord each. *See United States v. Franks*, 511 F.2d 25, 33 (6th Cir.), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2654, 45 L.Ed.2d 693 (1975). There is evidence in the record that the gold chloride microcrystalline test can differentiate between l-cocaine and d-cocaine. The trial court did not err in denying appellant's motion.

■ Luschen's fourth contention is that the trial court erred in allowing the government to reopen its rebuttal after the appellant had rested. The function of rebuttal is to explain, repel, counteract or disprove evidence of the adverse party. *United States v. Finis P. Ernest, Inc.*, 509 F.2d 1256, 1263 (7th Cir.), *cert. denied*, 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1975). The fact that testimony would have been more proper for the case-in-chief does not preclude the testimony if it is proper both in the case-in-chief and in the rebuttal. *United States v. Calvert*, 523 F.2d 895, 912 (8th Cir.), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1975). Even if the parties have rested, it is within the court's discretion to permit the government to reopen its case in order to permit additional testimony. *See United States v. Levin*, 443 F.2d 1101, 1107–08 (8th Cir.), *cert. denied*, 404 U.S. 944, 92 S.Ct. 297 (1971). The admissibility of rebuttal evidence is also entrusted to the sound discretion of the trial court. *United States v. Armstrong*, 462 F.2d 408, 411 (8th Cir. 1972). The question of whether the court abused its discretion is measured by three factors: (1) surprise to the defendant, (2) defendant's opportunity to meet the proof, and (3) detriment to the defendant because of the order in which the evidence was introduced. *United States v. Powers*, 572 F.2d 146, 152–53 (8th Cir. 1978); *United States v. Webb*, 533 F.2d 391, 395 (8th Cir. 1976).

■ Appellant's expert witness had testified that the proper tests for l-cocaine were the melting point test and the polarimeter test, which the government's witness had not run. The court allowed the government to have the tests run and present the results as rebuttal. Appellant says such evidence was limited to, and necessary to, the case-in-chief because it proved an element of the crime, namely that the substance was l-cocaine. Obviously, that is not the case. The results of the gold chloride microcrystalline test to that effect were already in evidence. The new tests served the permissible rebuttal function of counteracting the testimony of appellant's expert witness. Appellant also says that the trial court abused its discretion by allowing the government to reopen its rebuttal for this evidence after defendant had rested. A review of the three factors shows that this too is groundless. Luschen was not surprised by the additional tests. On the contrary, Luschen's l-cocaine/d-cocaine defense was a surprise to the government; the additional tests were those suggested by Luschen's witness. Luschen was given an opportunity to meet the proof. On the same day that his witness testified about the alternate tests, the government announced its intention to have those tests run, but Luschen declined the court's specific invitation to have his expert run the same tests with the government supplying the necessary equipment. There was no detriment to Luschen's defense because of the order of proof. The proof itself was detrimental, but it would have been equally

so whenever presented. The evidence was admissible as rebuttal, and there was no abuse of discretion in its timing.

Luschen's final contention is that there was no substantial evidence, independent of challenged hearsay statements in the testimony of informant Harris, establishing the existence of a conspiracy. He apparently relies on the rule that, in deciding whether to admit statements made by a co-conspirator, the trial judge must be satisfied that, based on the independent evidence, it is more likely than not that the statement was made during the course and in furtherance of an illegal association to which the declarant and the defendant were parties. *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir. 1978). However, this rule and his authorities apply only to the use of the declarations and acts of one conspirator against another. The rule does not prohibit any person from testifying to the acts and declarations of the accused himself. *Klein v. United States*, 472 F.2d 847, 850 (9th Cir. 1973). Here, informant Harris was testifying as to the acts and declarations of Luschen himself. This testimony was admissible against Luschen.[4] Harris's testimony plus the direct evidence of Luschen's conduct and admissions during the buys and the circumstantial evidence of his itineraries and the items found in searches constituted ample evidence of his participation in a conspiracy to distribute cocaine.

For the above reasons, the conviction of appellant Luschen is affirmed.

Next, we turn to the contentions of appellant King. King asserts that the trial court erred in admitting evidence which was the product of illegal searches and seizures. King challenges the searches on three grounds: that the arrest was without probable cause, invalidating the custodial search; that the affidavit in support of the search warrant for his apartment contained material misrepresentations of essential facts; and that the facts set forth in the affidavit in support of the search warrant

were obtained through a prior illegal search.

King contends that he was arrested solely for his association with Luschen at the time of the sale. The custodial search of King revealed a razor blade, a straw and paper bindles, all associated with cocaine use. "Mere presence" at the scene of a crime is not probable cause for a warrantless arrest. *United States v. Di Re*, 332 U.S. 581, 593, 68 S.Ct. 222, 92 L.Ed. 210 (1948); *United States v. Barber*, 557 F.2d 628, 631 (8th Cir. 1977). Evidence procured in a custodial search resulting from an unlawful arrest should be suppressed. *United States v. Di Re, supra*, 332 U.S. at 595, 68 S.Ct. at 228. However, probable cause to arrest exists when an officer personally knows or has been reliably informed of sufficient facts to warrant his belief that a crime has been committed and that the person who is to be arrested committed it. *United States v. Stevie*, 578 F.2d 204, 208 n.4 (8th Cir. 1977), *aff'd on rehearing en banc*, 582 F.2d 1175 (1978), *cert. denied*, 443 U.S. 911, 99 S.Ct. 3102, 61 L.Ed.2d 876 (1979). Here, King was not arrested for his "mere presence." There were facts known to the police which would lead a reasonable person to believe that a crime had been committed and that King had committed it. For example, on both September 12 and December 13, after arranging the buy, Luschen said that he had to pick up the cocaine, went directly to King's apartment for about fifteen minutes, and then went to the prearranged location and made the sale. Also, each buy was arranged so that King was in a position to oversee the transaction. In addition, the arresting officers had probable cause based on an information by a government informant who testified at trial and whom the officers knew to be reliable. When independent sources corroborate the information supplied by the informant, there is probable cause for the arrest. *United States v. Bazinet*, 462 F.2d 982, 988 (8th Cir.), *cert. denied*, 409 U.S. 1010, 93 S.Ct. 453, 34 L.Ed.2d 303 (1972). Here,

---

4. The court cautioned the jury that Harris's statements about Luschen would not be admissible against King unless there was independent evidence of the conspiracy.

facts known to the arresting officers plus the information by the informant constituted probable cause. The custodial search was legal, and the drug paraphernalia found on King's person was properly introduced into evidence against King.

The post-arrest search of King's apartment was done pursuant to a search warrant. King attacks the validity of the search warrant on the alternative grounds that the affidavit in support of the warrant contained material misrepresentations of essential facts or that the facts set forth in the affidavit were obtained by a prior illegal search.

The former challenge is grounded on *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), *on remand sub nom. Franks v. State*, 398 A.2d 783 (Del. Sup.1979), where the Supreme Court held that once a defendant makes a preliminary showing of deliberate falsity or reckless disregard for the truth on the part of the affiant, the court must make a determination as to whether, absent the falsity, there is sufficient content in the affidavit to support a finding of probable cause and, if not, hold a hearing. Officer Belkair's affidavit was based in part on information from an informant. On appeal King claims that this information was false and misleading because it failed to state the following facts which were elicited at trial: that Harris's direct meetings with King were in December 1977, that the utilities in King's apartment were listed to both King and his girlfriend, that Luschen was at 2038 Montreal Avenue before the first buy and after the second buy, that Luschen told Harris that King never kept cocaine in his apartment, and that Harris was working with narcotics agents in exchange for pay and a more lenient sentence on a pending felony charge.

King overestimates the breadth of a *Franks* challenge. First, *Franks* anticipates a pretrial procedure. Here, King did not put forth the unreliability of the infor-

mant as a reason to suppress the evidence until after both sides had rested, at a conference on jury instructions. A *Franks* challenge at that stage of the trial is of questionable validity. Nevertheless, we will assume without deciding that the issue is preserved for review. Second, *Franks* states, "The deliberate falsity or reckless disregard whose impeachment is permitted is only that of the affiant, not of any nongovernmental informant." *Id.* at 171, 98 S.Ct. at 2685. Officer Belkair set out reasons for her belief that Harris was credible as required by *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), *modified, United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971). King did not suggest at any time that Officer Belkair did not believe the information or accept it as true. King cannot use a supposed *Franks* challenge to impeach informant Harris. Third, *Franks* requires an offer of proof.

> There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. *Supra*, 438 U.S. at 171, 98 S.Ct. at 2685.

At the pretrial suppression hearing,[5] King specifically declined to introduce any evidence with regard to the search warrant. Even his post-trial request that the court "reconsider the search warrant matter" in light of the informant's testimony did not point out specifically the portion of the warrant affidavit that he claimed was false, nor was it accompanied by a statement of supporting reasons and affidavits of witnesses. Rather, King asserted only that an informant with a criminal record who was

---

5. Officer Belkair did not testify at the suppression hearing due to a back injury, but Agent Skala's testimony corroborated her affidavit.

assisting narcotics agents in order to obtain a more lenient sentence was not reliable. King did not meet the requirements to obtain a hearing. Finally, as the trial court ruled, the alleged omissions did not undermine probable cause. See also *United States v. King*, 567 F.2d 785 (8th Cir. 1977), *cert. denied sub nom. Lewis v. United States*, 435 U.S. 945, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978), a pre-*Franks* decision where this court held on similar facts that a search warrant issued pursuant to the affidavit was not invalidated despite failure to state that another person also resided at that address, discrepancies with evidence introduced at trial, and reliance on an informant. *Id.* at 789.

■ King's alternative ground, that the facts set forth in the affidavit were obtained in a prior illegal search, is based on surveillance of King's apartment from the second floor landing near his apartment door. The apartment building was a security building. Officer Stone obtained a security key [6] from the manager, without procuring a warrant. In essence, King is asking us to reverse our holding in *United States v. Eisler*, 567 F.2d 814 (8th Cir. 1977), that there is no reasonable expectation of privacy in halls and common areas of apartment buildings. This we decline to do. Products of surveillance inside the apartment building are not rendered inadmissible by failure to obtain a search warrant where the police officer was not in an area where the individual had a reasonable expectation of privacy.

■ King argues that the trial court erred in the admission of statements by Luschen which implicated King. In *United States v. Bell, supra*, 573 F.2d 1040, this court held:

[A]n out-of-court statement is not hearsay and is admissible if on the independent evidence the district court is satisfied that it is more likely than not that the statement was made during the course and in furtherance of an illegal association to which the declarant and the defendant were parties. *Id.* at 1044.

In *United States v. Macklin*, 573 F.2d 1046 (8th Cir.), *cert. denied*, 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978), we stated that in all trials commencing after *United States v. Bell*, the trial court must make an explicit finding on the record that evidence as to the existence of a conspiracy is sufficient to render admissible the statements of co-conspirators. *Id.* at 1049. Here, the trial court made such a finding basing it on the drugs, paraphernalia and notebook found in King's bedroom; the frequency with which Luschen returned to King's apartment after a contact; and the fact that King drove Luschen to a sale and oversaw the transaction. This was sufficient evidence of the existence of a conspiracy. *See United States v. Scholle*, 553 F.2d 1109 (8th Cir.), *cert. denied*, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977); *United States v. Carlson*, 547 F.2d 1346 (8th Cir. 1976), *cert. denied sub nom. Hofstad v. United States*, 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977). *Compare United States v. Burgos*, 579 F.2d 747 (2d Cir. 1978); *United States v. Holder*, 560 F.2d 953 (8th Cir. 1977); *United States v. Frol*, 518 F.2d 1134 (8th Cir. 1975). Luschen's statements were properly admitted under 801(d)(2)(E) Fed.R.Evid. and *United States v. Bell*.

■ King also complains of the trial court's failure to give an instruction on the admissibility of hearsay statements to the conspiracy count. King did not make an objection after the trial court gave the jury instructions as required by Rule 30, Federal Rules of Criminal Procedure. Therefore, this issue was not preserved for review.[7] *See United States v. Collins*, 552 F.2d 243, 246 (8th Cir.), *cert. denied*, 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977).

---

6. King makes much of the fact that the key fit King's apartment as well as the security door. The fact that the pass key also would have operated King's door is irrelevant since Officer Stone made no attempt to use it for that purpose.

7. If it had been preserved, there would be no error. The trial court's comments at the time Luschen's statements were admitted as well as the jury instructions were in compliance with *United States v. Bell*.

■ King next contends that the evidence adduced at trial was insufficient to sustain a finding of guilt on counts II (September 12 sale), III (December 13 sale), and IV (conspiracy). "In considering a challenge to the sufficiency of the evidence [after a jury verdict], this court must accept as established all reasonable inferences from the evidence that tend to support the jury's verdict." *United States v. Collins, supra,* 552 F.2d at 245; *United States v. Overshon,* 494 F.2d 894, 896 (8th Cir.), *cert. denied,* 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974). The evidence in this case clearly provided a sufficient basis from which the jury could infer that King had participated in the cocaine transactions. Evidence on count II included, inter alia, Luschen's statements on the tape of the September 12 buy that he had to pick up the cocaine across the street from the phone booth and from a man, followed by his going directly to King's apartment and then directly to the buy; the rare combination of cocaine and inositol involved in both buys and in the bottles found in the search of King's bedroom; and the evidence of drug dealing found in King's apartment. Evidence on count III included, inter alia, King's picking up Luschen immediately after Officer Belkair placed her order and driving him to King's apartment and then to the buy; the drug paraphernalia found on his person when he was arrested; and the drug paraphernalia and notebook found in the search of his apartment. On count IV, the evidence discussed above, viewed in the light most favorable to the government, would allow a reasonable jury to find King guilty of conspiracy to distribute cocaine. Each time Luschen indicated that he was going to get cocaine from his source, he went to King's apartment and, immediately thereafter, delivered the cocaine. Also, King was in a position to oversee each buy from a nearby vantage point. King's presence at the buys was not necessary to implicate him as a participant in each transaction. *See United States v. Martinez,* 573 F.2d 529 (8th Cir. 1979). The tapes and the products of the searches confirm his participation in each transaction. There was sufficient evidence to support King's convictions.

■ King contends that the trial court erred in allowing expert testimony as to the meaning of the notations in the notebook found in his bedroom. King relies on *United States v. Brown,* 584 F.2d 252 (8th Cir. 1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979), where this court rejected expert testimony interpreting pieces of paper found scattered in two different residences.

> The exhibits alleged to be "drug notes" consisted of numerous pieces and scraps of paper, of various shapes and sizes, penned in several colors of ink and pencil, and written in different types of handwriting. It is not known who wrote them, and they are not dated. *Id.* at 265.

Furthermore, while there the expert surmised that a few notations pertained to the price of heroin, other names and numbers had no meaning to him. *Ibid.* The facts here are distinguishable: instead of several scraps in various locations in different handwritings, there was a single notebook in one handwriting found in King's drawer along with drugs and drug paraphernalia. It is not alleged that any of the notations were incongruous or unintelligible. Who wrote the notebook was established by the correspondence of the dates and prices to those involved in the case. The fact that no handwriting analysis was done is not a bar to its admission. Under Rule 901 of the Federal Rules of Evidence, the contents of a writing may be used to aid in determining the identity of the declarant. *United States v. Wilson,* 532 F.2d 641, 644–45 (8th Cir.), *cert. denied,* 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117 (1976). Here, adequate circumstantial evidence linked the notebook to King. There was no error in allowing expert testimony as to the meaning of the notations in the notebook.

■ King's final contention is that the trial court erred in denying his motion for severance because count I names only Luschen and because count IV alleges acts occurring after the date set forth in count I. King failed to renew his motion for severance at the close of the government's case

or at the conclusion of all the evidence. King has therefore waived his right to present the severance issue on appeal.[8] *United States v. Pelton*, 578 F.2d 701, 711 (8th Cir.), *cert. denied sub nom. Rich v. United States*, 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978); *United States v. Carlson, supra*, 547 F.2d at 1361 n.16.

For the above reasons, the conviction of appellant King is affirmed.

---

8. If it had been preserved, denial of King's severance motion would not be error. Joinder of Luschen and King in an indictment alleging that they "participated in the same series of acts or transactions" is clearly permitted by Rule 8(b) of the Rules of Criminal Procedure. In fact, joinder of persons involved in a single conspiracy is favored where the charges are based on the same evidence and acts. *United States v. Milham*, 590 F.2d 717, 722 (8th Cir. 1979). The trial court, in its discretion, must weigh the judicial economy of a single trial against the possible prejudice to the co-defendants of a joint trial; and its decision whether to grant severance will not be disturbed on appeal absent an abuse of discretion. *United States v. Runge*, 593 F.2d 66, 73 (8th Cir. 1979); *United States v. Milham, supra*, 590 F.2d at 722. In order to prevail on his claim that the trial court abused its discretion in denying his motion to sever, King would have had to make a showing of real prejudice by demonstrating that the jury was unable to compartmentalize the evidence as it related to him and his co-defendant. The trial court reminded the jury repeatedly that count I named only defendant Luschen. King has shown no real prejudice from the fact that he was excluded from one of the four counts. Therefore, he has not made a showing of abuse of discretion.