803 F.2d 722
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee
v.
RUDOLPH POINDEXTER, Defendant-Appellant.
 No. 85-1951.
 United States Court of Appeals, Sixth Circuit.
 Sept. 12, 1986.
 
 Before KRUPANSKY, NELSON and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Defendant Rudolph Poindexter appeals from his jury conviction on two counts of armed bank robbery, 18 U.S.C. Sec. 2113(a)(d), arising out of two robberies of the same branch of the Michigan National Bank in Warren, Michigan on November 2, 1982, and April 15, 1984. Poindexter maintains that the district court should have granted a mistrial because of the prejudice he suffered from witnesses and jurors seeing him in handcuffs prior to trial. He also maintains that the court committed reversible error when it allowed certain rebuttal testimony, failed to give part of a requested jury instruction regarding identification, and improperly curtailed defendant's right of cross-examination.
 
 
 2
 Because whatever error the trial court committed did not affect defendant's substantial rights, or create a substantial risk of misidentification, the judgment of the district court is affirmed.
 
 I.
 
 3
 Poindexter claims that a substantial likelihood of misidentification resulted when several prosecution witnesses, prior to testifying that Poindexter was the person who robbed them, saw Poindexter in handcuffs and being escorted by United States marshals. Defendant's motion for a mistrial was denied by the district court.
 
 
 4
 The appropriate standard for review is set forth in United States v. Hamilton, 684 F.2d 380, 383 (6th Cir. 1982):
 
 
 5
 "Suggestiveness of the identification procedure, however, does not merit suppression by itself. The proper standard is whether, under the totality of the circumstances, there was an impermissibly suggestive identification procedure used which caused a very substantial likelihood of irreparable misidentification. Robinson v. Smith, 624 F.2d 54 (6th Cir. 1980). The central focus is on the reliability of the identification. Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Reliability is tested by considering the following factors: (1) the opportunity of the witnesses to view the criminal; (2) the witnesses' degree of attention; (3) the accuracy of the witnesses' prior descriptions; (4) the witnesses' level of certainty; and (5) the length of time between the first view of the criminal and the subsequent identification. Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972)."
 
 
 6
 "'A defendant is denied due process only when the identification evidence is so unreliable that its introduction renders a trial unfair."' Smith v. Perini, 723 F.2d 478, 482 (6th Cir. 1983), quoting Summit v. Bordenkircher, 608 F.2d 247, 253 (6th Cir. 1979), citing Manson v. Brathwaite, 432 U.S. 98 (1977).
 
 
 7
 Here, three of the government's witnesses made in-court identifications of the defendant; only their testimony could have been affected by seeing the defendant in handcuffs prior to trial. Pamela Kast, a teller during the 1982 robbery, testified that one of the robbers was a black man, about 50 years old, weighing 140 pounds, with a slight mustache, a shiny afro hairstyle, and wearing sunglasses. She testified that the night before the robbery she had attended a seminar concerning bank robberies, and, as a result, paid close attention to the faces of the robbers. She stated that she had observed the robber earlier in the day when he inquired about opening an account, and again when he returned to commit the robbery. She observed the defendant on that occasion for a period of about two minutes and forty-five seconds. About six months after the robbery, she was shown a photographic array of six black males, which did not include the defendant, and she stated that none of the individuals in the photographs committed the robbery. Under the Neil v. Biggers standard, Kast's identification of the defendant was not unreliable, and rested on a basis independent of her seeing Poindexter in handcuffs prior to trial.
 
 
 8
 Susan Doroucher, another teller who was in the bank during the 1982 robbery, testified that she observed the robbers a few minutes before the robbery. She stated that she observed one of them from a distance of two feet, and described him as a black man in his late 30's, small, with a mustache, receding hairline, and wearing aviator sunglasses. Six months after the robbery, she too was shown a photo array of six black males, not including the defendant, and she stated that none of them committed the robbery. When asked if she had seen the defendant in the hallway, escorted by marshals, she stated that she saw someone, but did not identify him as the defendant. Doroucher's testimony is not unreliable, and it was unaffected by any impermissibly suggestive taint.
 
 
 9
 Mary DesMarais, a teller during both the 1982 and 1984 robberies, saw the robber early in the day of the 1982 robbery when he inquired about opening an account. During the 1984 robbery, she recognized one of the robbers as having committed the 1982 robbery. She described him as a black man in his late 30's with a receding hairline, who was wearing dark sunglasses and a suit. She identified the defendant in a photo array as the person who robbed her in 1982 and 1984. DesMarais was not questioned about whether she had seen the defendant in handcuffs prior to the trial, thus there is no basis on which to find that her identification of the defendant was tainted.
 
 
 10
 We conclude that defendant has made no showing that there was a substantial likelihood of misidentification by any of the witnesses who may have seen him in handcuffs.
 
 II.
 
 11
 Defendant contends that a mistrial should have been declared when some of the jurors observed the defendant in handcuffs being escorted down a hallway by the marshals. When the defendant moved for a mistrial, the district judge questioned the jury and found that three jurors had seen Poindexter in handcuffs. The judge asked them if having seen Poindexter in handcuffs would affect their ability to sit as fair jurors, and they answered in the negative. The court then instructed the jurors to ignore the fact that they had seen the defendant in handcuffs and, if it affected their ability, he wanted to know. None of the jurors responded, and the court denied defendant's motion for a mistrial.
 
 
 12
 Defendant cites no authority for the proposition that the observation of a defendant in handcuffs results in a per se due process violation. In United States v. Carr, 647 F.2d 867, 868 (8th Cir. 1981), quoting United States v. Robinson, 645 F.2d 616, 617 (8th Cir. 1981), the court stated:
 
 
 13
 "[B]rief and inadvertent exposure of defendants to jurors is not inherently prejudicial; the defendant must bear the burden of affirmatively demonstrating prejudice."
 
 
 14
 In light of the record of the court's questioning of the jurors, Poindexter has shown no prejudice. The district court did not abuse its discretion in refusing to grant defendant's motion for a mistrial.
 
 III.
 
 15
 Defendant contends that the district court committed reversible error in allowing the government to present, in rebuttal, the testimony of Nona Williams, co-defendant Michael Hawkins' girlfriend. Hawkins had pled guilty prior to trial. Williams was called to rebut defendant's testimony that he did not know the co-defendant, Michael Jack Hawkins, or anyone named Nona Williams. Ms. Williams testified that she knew Michael Hawkins, and that Hawkins had introduced her to Poindexter. She identified both Hawkins and Poindexter in the government's exhibit of surveillance pictures taken in the bank at the time of the robbery, and identified Poindexter in court. While the defendant maintains that Williams' testimony was identification testimony, properly suited for the government's case in chief and not for rebuttal, the district court found that it was properly received as rebuttal testimony. The court found that Michael Hawkins was not tied into the case in chief, but only brought into the case when the defendant testified that he did not know Hawkins. The court allowed Williams to testify that she knew both Poindexter and Hawkins, and that she knew they were working together. The court then allowed her to support her testimony by identifying the two defendants together in the bank photograph.
 
 
 16
 The determination whether rebuttal testimony should be allowed is a matter within the broad discretion of the trial court. United States v. Reese, 568 F.2d 1246, 1249 (6th Cir. 1977). Williams' testimony that Poindexter knew Hawkins was relevant to contradict Poindexter's testimony that he did not know Hawkins. The function of rebuttal is to explain, counteract, or disprove evidence of the adverse party. United States v. Luschen, 614 F.2d 1164, 1170 (8th Cir. 1980). Defendant maintains that even if Williams' testimony that Poindexter knew Hawkins was proper rebuttal, the court should not have allowed Williams to give that evidence by identifying Poindexter in the bank photographs. However, the fact that testimony might have been more proper for the case in chief does not preclude its use in rebuttal if it is proper both in the case in chief and in rebuttal. Id. Here, in order for Williams' testimony to carry any weight, it was important for the government to establish that Williams could identify both Poindexter and Hawkins. Thus, her identification testimony was properly included in rebuttal. The district court did not abuse its discretion in admitting Williams' testimony.
 
 IV.
 
 17
 Defendant maintains that the district court erred in refusing to give the entire text of the jury instruction regarding identification that was requested by the defendant. The court ification that was requested by the defendant. The cort recited most of the requested instruction, but deleted the last sentence which reads: "If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty." Upon defense counsel's objection to the deletion, the court responded: "I have said reasonable doubt so many times here that I don't think I need to say it again. I gave your entire instructions except the last sentence." Another part of the court's charge to the jury stated:
 
 
 18
 "Of course the burden of proof, as I have told you before, rests upon the Government to prove beyond a reasonable doubt the identity of the Defendant as the perpetrator of the crime with which he stands charged."
 
 
 19
 Any review of a claim of instructional error must be made in the context of the entire charge. Cupp v. Naughten, 414 U.S. 141, 147 (1973). Giving identification instructions is within the discretion of the trial court; they need only be given where there is a danger of misidentification due to the lack of corroborative evidence. United States v. Boyd, 620 F.2d 129, 131-32 (6th Cir.), cert. denied, 449 U.S. 855 (1980). Here, the in-court identifications were corroborated by the identifications from photo arrays and from bank surveillance photographs. Even if there was evidence in the case of a danger of misidentification, the charge, taken as a whole, clearly informed the jurors that if they had a reasonable doubt as to the accuracy of the identification, they were required to acquit. The identification instructions, as given by the court, properly set forth the law and are not in error.
 
 V.
 
 20
 Defendant's final contention is that the trial court impermissibly curtailed his right to cross-examine government witness Pamela Kast. Kast's testimony was given over two days. On the first day of trial, in cross-examining Kast, defense counsel asked Kast who was in the hall with her prior to trial. Kast answered that other witnesses were standing with her. Shortly thereafter, the court adjourned for the day. At the beginning of the next day's session, in continuing the cross-examination of Kast, defense counsel asked Kast if she had seen Mr. Poindexter being escorted out of the courtroom in handcuffs by two marshals. The prosecution objected that the question had been asked and answered, and the court sustained the objection. Defense counsel made no further inquiries into the matter.
 
 
 21
 The transcript reveals that the district court was in error when it ruled, in effect, that the proffered question had been asked and answered. However, a trial court's rulings limiting cross-examination will not be a basis for reversal of a criminal conviction unless a defendant's substantial rights are affected. United States v. Terry, 729 F.2d 1063, 1067 (6th Cir. 1984); Fed. R. Crim. P. 52(a). Here, the defendant argues that his substantial rights were affected because the issue of identification of the defendant was in controversy, and he wished to show the jury that Kast's identification of him was tainted because she had seen him in handcuffs prior to trial. While defendant should have been allowed to conduct further cross-examination, the loss of that opportunity did not affect his substantial rights. Defense counsel was able to challenge the basis of the witness' identification. Counsel established that Kast did expect to see the person accused of the crime in court at the trial. He brought out that three years had passed since the robbery occurred, and that Kast had only provided a general description of the robber at the time it happened. Thus, defense counsel did probe into the suggestiveness which can affect a witness' identification, and brought it to the jury's attention. Defense counsel was able to make the same suggestive identification argument with the other two witnesses who identified Poindexter in court. Sue Doroucher said she did not notice that the person being escorted by marshals was the defendant, and Mary DesMarais was not asked if she saw him. Even if counsel had been allowed to further cross-examine witness Kast, it is unlikely that such questioning would have affected the identification of Poindexter as one of the bank robbers. The district court's error was harmless, and it should not be the basis for the reversal of defendant's conviction. Chapman v. California, 386 U.S. 18, 24 (1967).
 
 
 22
 The judgment of the district court is affirmed.