STATE OF IOWA v. JAMES WATKINS, Appellant.

**Criminal law:** EVIDENCE: INSTRUCTION. A defendant in a prosecution for murder can not complain of an instruction given at his request, to the effect that if the jury find a certain witness to be the wife of the defendant no consideration is to be given her testimony, but if she was not his wife it should be given such weight as it was entitled to.

**Murder:** SELF-DEFENSE: EVIDENCE. In this prosecuti⬛︎
  the evidence is reviewed and held to raise an issue o⬛︎
  for submission to the jury.

**Same:** PROVOCATION: INSTRUCTION. To render the taking o⬛︎
  manslaughter instead of murder, the provocation must be su⬛︎
  as has a natural tendency to produce such a degree of excite-
  ment or disturbance of mind of an ordinary person as to de-
  throne reason and cause him to act from passion rather than
  deliberation and judgment. In this action there was evidence
  that defendant had previously armed himself with a deadly
  weapon for the encounter, and it is held that the court's instruc-
  tion that to constitute great and present provocation which would
  render the killing manslaughter instead of murder there must
  be something extraordinary, was not erroneous, especially as the
  court also instructed that the provocation must be sufficient to
  excite passion in a reasonable person.

*Appeal from Polk District Court.*—HON. JESSE A. MILLER,
Judge.

THURSDAY, JUNE 9, 1910.

THE defendant was convicted of murder in the first
degree, and appeals. *Affirmed.*

*J. B. Rush* and *S. Joe Brown,* for appellant.

*H. W. Byers,* Attorney-General, and *Charles W. Lyon,*
Assistant Attorney-General, for the State.

LADD, J.—I. The accused killed John Weaver, who
had been a boarder at his house, August 10, 1909. The
deceased had been married to Mary Sanders in the fore-
noon of that day. She had lived with de-
fendant eight years, but had left him two
days prior to her marriage to Weaver. She
denied ever having been married to defendant, but the
latter testified that she had been his wife during the time
they had lived together. Objection to the woman's compe-

...itness because wife of the defendant was over-
...s the witnesses were before the trial court, we
... say it erred in crediting the woman's testimony
...tead of the man's.   It instructed the jury that if they
...found from a preponderance of the evidence that she was
the wife of defendant, no consideration should be given her
testimony, but if she was not his wife, then it should be
given such weight as it was entitled to receive.   The de-
fendant requested that the jury be so instructed and there-
fore he cannot be heard to complain.   See *State v. Rocker,*
130 Iowa, 239; *Com. v. Mudgett,* 174 Pa. 211 (34 Atl.
588).

II.   The woman testified that deceased was unarmed
and had made no attack on defendant, as did Mrs. Stark,
at whose house the shooting occurred.   Their testimony was
corroborated by that of McCray.   According
2. MURDER:
   self-defense:   to defendant's story, after an interchange of
   evidence.
words concerning their respective rights to
the woman, deceased pulled a revolver, a scuffle ensued
when defendant got hold of it, pulled the trigger, and all
was over.   Plainly enough, the issue of self-defense was
for the jury.   Moreover, the evidence was such that the
jury might have found that Mary Sanders was not de-
fendant's wife, that he had been aware for some time pre-
vious of her intimacy with Weaver, and that he had armed
himself with a loaded revolver for the purpose of killing
his rival, and, therefore, that the provocation was not such ·
as to reduce the offense to that of manslaughter.

III.   In defining the provocation which would render
homicide manslaughter instead of murder; the court said
in the course of an instruction that, "to constitute the great
and present provocation, it must be some-
3. SAME:
   provocation:   thing extraordinary in its nature."   Appel-
   instruction.
ant criticizes the use of the word "extraor-
dinary," but in the connection found and followed by the
sentence indicating precisely what was intended, it could not

have been prejudicial, especially in view of the next instruction directing that the provocation must be sufficient to excite passion in a reasonable person. If the facts were as related by defendant, the killing was in self-defense and not owing to other provocation than the assault on him. If, as related by other witnesses, he had previously armed himself with a deadly weapon for the encounter, then the provocation must have been great to render the killing manslaughter instead of murder. *State v. Vance,* 17 Iowa, 138; *State v. Hockett,* 70 Iowa, 442. It must have been reasonable, as contended by appellant; that is, such provocation as had a natural tendency to produce a state of mind in an ordinary man of average disposition, in which reason is so disturbed or obscured by passion that the person is likely to act rashly, without due deliberation, and from passion rather than judgment. In other words, in determining whether provocation is reasonable or sufficient, ordinary human nature, the average of men of fair, average mind and disposition is the standard, and the provocation must be such as is likely, or has a natural tendency, to produce such a degree of excitement or disturbance in the mind of such men as that reason is dethroned by passion, and the act is the product of the latter rather than judgment. *Maher v. People,* 10 Mich. 212 (81 Am. Dec. 781); *State v. Ferguson,* 2 Hill (S. C.) 619 (27 Am. Dec. 412).

Manifestly, no precise line can be drawn by which to distinguish between provocations which will and will not mitigate the offense from murder to manslaughter. But, as said in Clark & Marshall on the Law of Crimes, 355: "Reasonableness is the test. The law contemplates the case of a reasonable man—an ordinary, reasonable man —and requires that the provocation shall be such as might naturally induce such a man, in the anger of the moment, to commit the deed. The rule is that reason should at the time of the act be disturbed by passion to an extent which

might render ordinary men, of fair, average disposition, liable to act rashly and without reflection, and from passion rather than judgment." Manifestly the provocation calculated to lead to this result must be something more than ordinary. It must be great or extraordinary, as the jury was told, though it is preferable to specifically state rather than characterize what is essential.

We have discovered no error in the rulings complained of, and the judgment is *affirmed*.