## HARRIS et al. v. UNITED STATES.

### No. 5101.

Court of Appeals of District of Columbia.

Argued April 8, 1930.

Decided June 2, 1930.

James A. O'Shea and John H. Burnett, both of Washington, D. C., for appellants.

Leo A. Rover and William H. Collins, both of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice.

The appellants jointly were convicted and sentenced upon an indictment for robbery, committed as alleged by stealing a pocketbook containing money from the person of another. They have appealed to this court.

At the conclusion of the evidence introduced by the government, the defendants moved for a directed verdict; but the motion was overruled. The defendants thereupon, without calling any witnesses, stood upon their exceptions to this and other rulings of the court.

Appellants contend that the lower court erred in denying their motion for a directed verdict. This contention requires a brief review of the evidence.

The testimony discloses that one Seruch T. Kimble, together with his daughter and a young lady friend, went to a football game at the baseball park at Seventh street and Florida avenue in the city of Washington, on November 17, 1928. They reached the grounds about 2 o'clock, and Mr. Kimble went to the ticket office and bought three tickets costing $6. When paying for them, he took his pocketbook containing $235 in money from his left side pocket, and took $1 from it, replacing the pocketbook in his pocket, and with this $1 and $5 which he took from his vest pocket he paid for the tickets. He then rejoined the girls at the edge of the crowd going into the park, at a point about thirty or forty feet from the iron gates opening into the grounds. The crowd at the entrance numbered three or four hundred people, and as they proceeded the whistle blew for the kick-off. Mr. Kimble kept his hand on his left side pocket and carried his overcoat over his right arm, but he was unable to say exactly when he removed his hand from

his pocket. When probably half way through the crowd, some one tapped him on the right shoulder "sufficiently noticeable" for him to turn around, and he did so, but he did not see any one whom he recognized. For some time before that, however, he had seen one of the defendants on his right side. He first saw him a third of the way through the crowd until within ten feet of the gate. He missed his pocketbook when he got in the park. He last knew he had his pocketbook when he was at least halfway through the crowd.

Mr. Kimble's daughter was about ten feet behind her father as they started for the gate, and saw both of the defendants at that time. She was trying to stay directly behind her father so as not to lose him in the crowd, but was unable to do so. Harris, one of the defendants, was right behind her father, and she could not edge her way to get directly behind him. Harris was closer to her father than the other people around them, so close that there was not the least bit of room between them, closer than anybody else in the crowd, and this prevented her from getting in the position she wanted when following her father in. She saw Harris tap her father on the shoulder and her father turn around. The other defendant, Rohan, at that time was on the left-hand side of her father. When they got about five feet from the gate both defendants moved aside and let the Kimble party go into the park without going in at the same time themselves. She did not see Rohan take the pocketbook, and she could not say that the defendants did not eventually go through the gate after the Kimble party went in.

About a week later, when the defendants were under arrest, they stated to a detective sergeant that they were not at the ball park on November 17th, that they did not remember where they were on that afternoon, but were sure they were not at the ball park; they said they had come to town with their wives, and were not sure which hotel they were stopping at, the Continental, the Commodore, or the Lincoln.

We think this evidence, although circumstantial only, is sufficient to sustain the verdict of the jury. It tends to prove that Kimble's pocketbook was taken from his pocket while he was passing through the crowd at the gate; that the defendants had crowded about him in a suspicious manner at that point; that one of them had tapped him on the right shoulder, causing him to look away from his left side where he kept his pocketbook, while at the same time the other de-

fendant was crowding equally near to him on that side; that the tapping apparently was without any purpose or result except to attract Kimble's attention from his left side; also that the defendants, when under arrest and questioned, admitted that they had "come to town" together, but denied that they had been at the ball park on the afternoon of the game, although uncertain as to where they were at that time, and also uncertain as to the hotel where they and their wives were staying.

■ Moreover, all questions relating to the credibility of the witnesses are for the jury. The only question reviewable in this appeal is whether or not there is substantial evidence in support of the verdict. We are satisfied there is. Cady v. United States, 54 App. D. C. 10, 293 F. 829; Westfall v. United States (C. C. A.) 2 F.(2d) 973; Israel v. United States (C. C. A.) 3 F.(2d) 743; Talmadge v. United States (C. C. A.) 4 F.(2d) 378; Hoskins v. United States (C. C. A.) 4 F. (2d) 804.

■ The record discloses that the detective sergeant who testified on direct examination that the defendants had said, "They didn't remember where they were on this day but not at the baseball park," was asked the following question on cross-examination by defendants'. counsel: "Now, when you were asked in the police court the following question: 'Did they say where they had been?' you said, 'No.' You didn't say they didn't remember in that conversation, did you?" The trial court refused to permit the interrogatory upon the ground that it did not tend to show a contradiction of the witness' present testimony. This was not error, for the rule is that the trial court may in its discretion limit the scope of the cross-examination, and the ruling in question does not show an abuse of such discretion. Horton v. United States, 15 App. D. C. 310, 324; Johnston v. Jones, 1 Black (66 U. S.) 209, 226, 17 L. Ed. 117; Blitz v. United States, 153 U. S. 308, 312, 14 S. Ct. 924, 38 L. Ed. 725; Davis v. Coblens, 174 U. S. 719, 727, 19 S. Ct. 832, 43 L. Ed. 1147.

The defendants presented nine written instructions to the court with a prayer that they be given to the jury in the court's charge. The first of these was for a directed verdict, which we have already considered. The second, third, and fifth were delivered by the court as written. The eighth was delivered as amended, and the fourth, sixth, seventh, and ninth were refused "except as charged" in the general charge of the court. The ac-

tion of the court in refusing to deliver the five instructions aforesaid as written is assigned as error.

■ We have carefully considered the instructions in question, and find that the applicable principles set out in them were fully declared and explained by the court to the jury in its general charge. Accordingly, we find no error in refusing to deliver them as written. In prayer No. 4 the following appears: "The whole burden of proof rests upon the Government, and the defendants could have sat mute and said nothing and produced no witnesses." We do not regard this as requesting an instruction that it was not incumbent upon the defendants to testify in their own behalf at the trial, or that the court was required to deliver such an instruction in the absence of a proper request therefor. If defendants' counsel desired such an instruction, it was their duty specifically to call the court's attention to its omission at the conclusion of the charge to the jury. No such action was taken by counsel, and we do not regard the general exceptions then taken as sufficient to bring the question into this appeal.

The court charged the jury in part as follows:

"You must presume these defendants to be innocent until you reach the conclusion—if you do reach the conclusion, after considering all the evidence, beyond a reasonable doubt—that they are guilty, and if you so come to that conclusion, of course, as I have so often told you, the presumption disappears. It is not sufficient that their guilt shall be proved by a mere preponderance of the evidence, but, as I have said, it must be proved beyond a reasonable doubt, and if, after consideration of all the evidence in the case, it can reasonably be reconciled with the hypotheses of innocence of the defendants, then it is your duty to do so and to render a verdict of not guilty.

You are instructed that in order to convict the defendants upon circumstantial evidence it is necessary not only to prove that all circumstances concurred, and to show that they committed the crime charged, but that those circumstances are inconsistent with any other reasonable conclusion than that of their guilt.

"You are instructed that to warrant a conviction of a criminal offense upon circumstantial evidence alone, such a state of facts and circumstances must be shown as that they are all consistent with the guilt of the parties charged, and such that they cannot, up-

on any reasonable theory, be true and the parties charged be innocent. These charges in regard to a case in which the evidence is circumstantial are the law."

Upon a review of the entire record we find no error in the rulings of the lower court. The judgment appealed from is accordingly affirmed.