## HART v. UNITED STATES.

### No. 7940.

United States Court of Appeals for the District of Columbia.

Decided July 31, 1942

Mr. Henry Lincoln Johnson, Jr., of Washington, D. C., for appellant.

Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., with whom Mr. Edward M. Curran, United States Attorney, of Washington, D. C., was on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

Appellant was tried in the District Court for the killing of his wife and was convicted of second-degree murder. On this appeal he relies upon four alleged errors. He challenges, first, the admission of testimony concerning his mental condition at the time of the trial. This testimony was offered by the Government to rebut evidence of appellant's insanity at the time of the homicide. Appellant contends that the testimony "was immaterial and tended to confuse the jury." The general rule is that in order to ascertain a person's mental condition at a particular time it is proper to receive evidence of the condition of his mind during a reasonable period both before and after that time;[1] where it has any tendency to throw light on the condition of mind of the accused at the time of the commission of the act charged.[2] The law does not fix the time arbitrarily but leaves its determination in each case to the sound discretion of the trial court.[3] In the present case, it appears that this discretion was wisely exercised, in view of the history of appellant's mental condition. This included lay evidence concerning peculiar conduct by appellant prior to the time of the homicide; expert evidence that ten months following appellant's indictment he suffered from prison psychosis and was confined in St. Elizabeths Hospital;[4] evidence that several months later he was released from the hospital as a sane person and that, at the time of the homicide, he suffered from an epileptic state or fugue. No contention was made, on behalf of appellant, that he was insane at the time of the trial. On cross-examination appellant's witnesses were asked how long, in their opinion, appellant had been in an epileptic state at the time of the homicide, whether it was curable, and whether it was likely to recur. It was in rebuttal of their testimony that the Government drew from its witnesses evidence concerning the nature of the mental disease which had caused appellant to be adjudicated insane, whether that mental disease was curable, whether it was likely to recur and what his mental condition was at the time of trial. Under these circumstances, it does not appear that there was abuse of discretion by the trial court.

Appellant's second contention concerns instructions, given and refused, upon the subject of insanity. Specifically, he objects that the court refused to grant a prayer reading as follows: "The jury is instructed as a matter of law that sufficient evidence has been adduced to raise the issue of the defendants sanity at the time of the crime, and that the government has the burden of proof to establish

[1] Earles v. State, 128 Tex.Cr.App. 663, 664, 84 S.W.2d 235, 236; Bond v. State, 129 Tenn. 75, 83–86, 165 S.W. 229, 231, 232; People v. Willard, 150 Cal. 543, 549, 550, 89 P. 124, 127.

[2] Guiteau's Case, D.C., 10 F. 161, 172; Waycaster v. State, 185 Miss. 25, 36, 187 So. 205, 208; State v. Tarwater, 293 Mo. 273, 293, 239 S.W. 480, 486.

[3] State v. Stacy, 104 Vt. 379, 399, 160 A. 257, 265, 747; State v. Crowe, 39 Mont. 174, 179, 102 P. 579, 581, 18 Ann. Cas. 643; 2 Wigmore, Evidence (3d ed. 1940) § 233.

[4] See Gonzales v. United States, 40 App.D.C. 450, 457.

beyond a reasonable doubt that the defendant was of sound mind and not impelled by an uncontrollable or irresistable [sic] impulse at the time of the offense." The only error predicated on the refusal to grant this prayer is that the jury was not informed that the presumption of sanity has no evidential weight once the issue of insanity has been raised by the introduction of evidence by the defendant. But, assuming the correctness of this proposition, the proposed instruction is wholly lacking in language which would have been helpful to the jury in that respect. As it was, therefore, an inadequate and insufficient statement, which failed to reveal the proposition for which appellant now contends, there could be no error in its rejection;[5] and this is even more true because the requested prayer as it was actually drafted was adequately and substantially covered by the charge given.[6] The court instructed the jury that the issue of insanity had been raised by the appellant, and that the Government had the burden of proving his sanity beyond a reasonable doubt. Under the circumstances, it was not required to go further.[7]

■ Appellant's third contention is that the court erred in failing to give an instruction to the effect that the jury might consider the question of appellant's sanity as evidence in determining whether the provocation suffered by him—he testified that his wife slapped his face—was sufficient to reduce the grade of his offense from murder to manslaughter; assuming that the jury rejected his plea of insanity and found appellant legally responsible for his acts. The rule is that provocation, in order to be sufficient, must be such as is calculated to produce hot blood, or irresistible passion in the mind of a reasonable man[8] or of an average man of ordinary self-control.[9] This court has recently declared the law in Bishop v. United States, as follows: "The test of sufficiency of such provocation is that which would cause an ordinary man, a reasonable man, or an average man, to become so aroused. Such a man can only mean a 'sober man', and the provocation must be sufficient to create 'heat of passion' in a reasonable, sober man. * * * The standard of the provocation that may create the 'heat of passion' reducing murder to manslaughter is the same for all men, whether drunk or sober. We, therefore, conclude that the court correctly defined manslaughter and the proper standard to be applied when intoxication is pleaded as a defense."[10] While sympathy might at first glance suggest a more lenient rule for persons of low mentality or unstable emotions, the result would be disastrous in the uncertainty of its application. The rule suggested by appellant would become a refuge for ill-tempered, irresponsible citizens; it would put a premium upon lack of self-control and would penalize the reasonable man, the average man, the prudent man, because of the restraint which he practices in his dealings with his fellows.

■ Finally, appellant assigns as error the admission of a section of the skull of the dead woman, in which was embedded a small piece of metal. The evidence disclosed that death was caused by a knife wound in the chest which penetrated the woman's heart. This wound was one of several which she suffered in the fatal attack. One of these wounds was that caused by the thrust of the knife into her head at the point where the metal was still embedded in the skull. Appellant's knife was found, soon after the attack, covered with blood and with the end of the blade broken off. The connection between the other circumstances and the real evidence to which appellant objects, is obvious;[11]

---

[5] George v. United States, 75 U.S.App.D.C. 197, 125 F.2d 559, 563; Harris v. United States, 59 App.D.C. 353, 355, 41 F.2d 976, 978; Stout v. United States, 8 Cir., 227 F. 799, 803.

[6] Hodge v. United States, 75 U.S.App.D.C. 332, 126 F.2d 849, 850; Clifton v. United States, 54 App.D.C. 104, 106, 295 F. 925, 927.

[7] Battle v. United States, 209 U.S. 36, 38, 28 S.Ct. 422, 52 L.Ed. 670.

[8] People v. Wells, 10 Cal.2d 610, 623, 76 P.2d 493, 501; State v. Fisko, 58 Nev. 65, 75, 70 P.2d 1113, 1116; Territory v. Catton, 5 Utah 451, 16 P. 902, 907.

[9] State v. Nevares, 36 N.M. 41, 45, 46, 7 P.2d 933, 935, 936; Freddo v. State, 127 Tenn. 376, 382, 155 S.W. 170, 172, 44 L.R.A.,N.S., 659; State v. Watkins, 147 Iowa 566, 569, 126 N.W. 691, 692; State v. Lantzer, 55 Wyo. 230, 246, 247, 99 P.2d 73, 78, 79; People v. Golsh, 63 Cal.App. 609, 614, 616, 617, 219 P. 456, 458, 459.

[10] 71 App.D.C. 132, 136, 137, 107 F.2d 297, 302, 303.

[11] 2 Wharton, Criminal Evidence (11th ed. 1935) § 760: "* * * parts of the deceased, such as the skull or jawbone may be admitted to illustrate the nature

as is its relevancy and materiality.[12] Appellant contends, however, that the separation of the section of bone from the woman's skull and its presentation in court was an illegal act; hence, that the evidence acquired an illegal character and was inadmissible for that reason. He relies upon a section of the District of Columbia Code which forbids the exposure of dead bodies, or their exhibition in public.[13] This statute was not intended to prevent the use in evidence of a portion of the body of a person whose death is the subject of the crime. But even assuming that the evidence was illegally procured, it was not, therefore, inadmissible. It is necessary in this connection to distinguish between evidence illegally procured[14] and evidence procured by unconstitutional search and seizure.[15]

We have carefully considered all appellant's assignments and contentions. We are satisfied that the case was well and fairly tried, that the evidence was sufficient to sustain the conviction, and that the jury was properly instructed.

Affirmed.

---

of the wound received, *to identify the* assailant or *instrument used* where that is essential, or to illustrate any other material issue of which such evidence is capable." (Italics supplied.)

[12] Evans v. United States, 10 Cir., 122 F.2d 461, 466; Note, 12 L.R.A.,N.S., 238.

[13] D.C.Code (1940) § 27—120: "It shall be the duty of any person or persons having custody or control of the dead body of any human being or any part of such body to report in writing or cause to be reported in writing, to the health officer of *said District, within forty-eight* hours after the death of the deceased, the name of said deceased and the location of the body or part thereof. No such body or part thereof shall be kept in said District in such manner as to give rise to any offensive odors to the annoyance of any person or persons in the neighborhood or to the public, nor so as to be exposed to the public view; nor shall any such body or part thereof be permitted by the person or persons having custody or control of it to remain unburied for a longer period than one week after death without permission of the health officer, unless it has been cremated or deposited in the vault of some cemetery; nor shall any person publicly exhibit in said District, for pay or otherwise, any dead body of any human being or any part of such body without a permit from the health officer of said District so to do, except such exhibition be in connection with some government museum or with some institution of learning permanently located in said District."

[14] Olmstead v. United States, 277 U.S. 438, 467–469, 48 S.Ct. 564, 72 L.Ed. 944, 66 A.L.R. 376; Goldstein v. United States, 62 S.Ct. 1000, 86 L.Ed. ——.

[15] Weeks v. United States, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652, L. R.A.1915B, 834, Ann.Cas.1915C, 1177; Nueslein v. District of Columbia, 73 App. D.C. 85, 89–91, 115 F.2d 690, 694–696.