

# IN THE
# TENTH COURT OF APPEALS

## No. 10-22-00154-CR

**GUY WAYNE LYNCH,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 443rd District Court
Ellis County, Texas
Trial Court No. 42838CR**

## MEMORANDUM OPINION

In his sole issue on appeal, appellant, Guy Wayne Lynch, challenges his murder conviction for which he received a sentence of seventy-five years in prison. *See* TEX. PENAL CODE ANN. § 19.02(b). Specifically, Lynch contends that the trial court erred by refusing a punishment instruction on sudden passion. We affirm.

**Lynch's Requested Instruction on Sudden Passion**

At trial, Lynch testified that he shot his girlfriend, Tia Spearman, out of fear because a demon possessed her. In the trial court and on appeal, Lynch asserts that his testimony about the demon allegedly possessing Spearman at the time of the shooting entitled him to an instruction on sudden passion in the jury charge for punishment. We disagree.

STANDARD OF REVIEW

"Our first duty in analyzing a jury-charge issue is to decide whether error exists." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). Where a trial court has refused to give a sudden-passion instruction at the punishment phase, it is the reviewing court's duty "to look at the evidence supporting the charge of sudden passion, not the evidence refuting it" in deciding whether error has occurred. *Beltran v. State*, 472 S.W.3d 283, 294 (Tex. Crim. App. 2015) (citing *Trevino v. State*, 100 S.W.3d 232, 239 (Tex. Crim. App. 2003) (per curiam)).

If we find error, then we consider whether to reverse based on the resultant harm. *Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020) (citing *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020)); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). In a case like this one where a trial court denied a sudden-passion instruction in the punishment phase, if the trial court erred, the Court of

Criminal Appeals has "focused on the likelihood that the jury would have found sudden passion based on the state of the record as a whole." *Wooten v. State*, 400 S.W.3d 601, 608 (Tex. Crim. App. 2013) (citing *Trevino*, 100 S.W.3d at 236). In *Wooten*, the Court of Criminal Appeals stated the standard as follows: "If the error is preserved, as it was here, the record must demonstrate that the appellant has suffered 'some harm.'" *Id.* at 606 (citing *Trevino*, 100 S.W.3d at 242). "Harm must be evaluated in light of the complete jury charge, the arguments of counsel, the entirety of the evidence, including the contested issues and weight of the probative evidence, and any other relevant factors revealed by the record as a whole." *Id.* (citing *Almanza*, 686 S.W.2d at 171). "To assay harm, we focus on the evidence and record to determine the likelihood that a jury would have believed that the appellant acted out of sudden passion had it been given the instruction." *Id.* (citing *Trevino*, 100 S.W.3d at 243).

APPLICABLE LAW

At the punishment stage of a murder trial, "the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause." TEX. PENAL CODE ANN. § 19.02(d). Unlike self-defense, sudden passion is a mitigating factor, which, if proven by a preponderance of the evidence, reduces the offense of murder to a felony of the second degree. *Id.*; *Jackson v. State*, 160 S.W.3d 568, 573 (Tex. Crim. App. 2005). "[S]udden passion" is defined in the Texas Penal Code as a "passion directly caused by and arising out of provocation by the individual

killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2). "Adequate cause" means "cause that would commonly produce a degree of anger, rage, resentment, or terror is a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1). A defendant's personal circumstances, such as "'low mentality or unstable emotions,'" are not the measure of adequate cause. *Gonzales v. State*, 689 S.W.2d 900, 904 (Tex. Crim. App. 1985) (quoting *Hart v. United States*, 130 F.2d 456, 458 (D.C. Cir. 1942)); *see, e.g., Lucas v. State*, No. 12-13-00378-CR, 2015 Tex. App. LEXIS 2270, at *8 (Tex. App.—Tyler Mar. 11, 2015, no pet.) (mem. op., not designated for publication) ("The record indicates that Appellant was mentally ill, intoxicated, and hallucinating when he killed Cobb, but these factors are not applicable in determining adequate cause."). Rather, "[a]dequate cause" considers a person of "ordinary temper." *Gonzales*, 689 S.W.2d at 904; *see* TEX. PENAL CODE ANN. § 19.02(a)(1), (d).

A sudden-passion charge should be given if there is some evidence to support it, and if the defendant requests it. *Wooten*, 400 S.W.3d at 605 (citing *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005); *Trevino*, 100 S.W.3d at 238); *accord Beltran*, 472 S.W.3d at 289. "The defendant has the burden of production and persuasion with respect to the issue of sudden passion." *Beltran*, 472 S.W.3d at 289 (citing *Wooten*, 400 S.W.3d at 605). A defendant that presents evidence of sudden passion is entitled to an instruction

on this mitigating circumstance "even if the evidence is weak, impeached, contradicted, or unbelievable." *Trevino*, 100 S.W.3d at 238. The defendant's testimony alone can justify requiring a sudden-passion instruction. *Id.* (citing *Shaw v. State*, 243 S.W.3d 647, 662 (Tex. Crim. App. 2007)). The question is "whether there was any evidence from which a rational jury could infer sudden passion." *Moore v. State*, 969 S.W.2d 4, 11 (Tex. Crim. App. 1998). "'Anything more than a scintilla of evidence is sufficient to entitle a defendant'" to a sudden passion instruction at punishment. *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998) (quoting *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)).

An instruction on sudden passion is warranted if the record reflects an inference that:

> (1) the defendant acted under the immediate influence of a passion such as terror, anger, rage, or resentment; (2) his sudden passion was in fact induced by some provocation by the deceased or another acting with him, which provocation would commonly produce such a passion in a person of ordinary temper; (3) he committed the murder before regaining his capacity for cool reflection; and (4) a causal connection existed between the provocation, passion, and homicide.

*Griffin v. State*, 461 S.W.3d 188, 192 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (internal quotations omitted) (citing *Wooten*, 400 S.W.3d at 605); *accord Herrera v. State*, 513 S.W.3d 223, 225 (Tex. App.—San Antonio 2016, no pet.).

ANALYSIS

At trial, Lynch confessed that he killed Spearman. Lynch met Spearman online, and she later contacted him because she needed a place to live. Spearman moved into an apartment with Lynch and his sons. Lynch acknowledged that at this time, he did many "immoral things," including sex acts, involvement in a motorcycle gang, and using and selling various drugs. Lynch claimed that Spearman started acted differently and seemed to mock God after she moved into the apartment. In his testimony, Lynch believed that Spearman was possessed by a demon and was concerned about the safety of his sons. As such, Lynch determined that Spearman needed to move out of the apartment.

The next day, Lynch asked Spearman to go for a drive. While driving around town, Lynch tried to convince Spearman to move out of the apartment. Lynch testified that "there wasn't anything unpleasant, nothing negative or no yelling or nothing like that. It was more like just casual talk and trying to figure out where she might could go, things like that." Thereafter, Spearman purportedly had "a sudden change of attitude, and she, like—like, she felt an urgency or something, but she kicked my dash with her foot." When Lynch tried to calm her down, Spearman allegedly yelled that "it's not going to be all right." Spearman refused to move out of the apartment.[1] It was at this point that Lynch claimed,

---

[1] The record evidence showed that Lynch lied and put Spearman and one of his sons on the lease for the apartment that he was living in so he could use their good credit. Therefore, because she was listed on the lease, Lynch could not force Spearman to move out of the apartment. At this time, Lynch was also

a spirit that moved us both in the same direction. One, she acknowledged it by turning to me and telling me to do—to go ahead and do that, to do it. And at the same time, I was moving in the same direction and—and pulled the pistol from my waist, and that's when I shot her.

On cross-examination, Lynch admitted that he put the pistol to Spearman's forehead and fired while the two were driving in his truck. Lynch denied that Spearman was the problem, but rather a demon that had possessed her and "was doing . . . the trouble, making the trouble and causing the problems." Lynch also admitted that: (1) Spearman did not have a weapon with her; (2) he was fearful of the demonic presence; and (3) because he wanted to get the demonic presence away from him, he laid Spearman out on the ground after shooting her the first time, shot her again, and left her. Lynch agreed that Spearman "didn't do anything that—where she deserved to die." When asked what was going through his mind at the time he pulled the trigger, Lynch stated that it happened "[i]n one instant" and that "[i]t was forces that occurred that I can't explain."

As set out above, none of the evidence showed that Lynch satisfied the statutory requirements for an instruction on sudden passion. As stated earlier, under section 19.02(a)(2) of the Texas Penal Code, sudden passion must be "directly caused by or arising out of provocation by the individual killed or another acting with the person

---

in contact with an ex-girlfriend who was incarcerated but was scheduled to be released soon from jail. It also appeared that Lynch planned on having the soon-to-be-released ex-girlfriend move in with him at the apartment.

killed." TEX. PENAL CODE ANN. § 19.02(a)(2). Here, there was no evidence of any provocation by Spearman to provoke the terror Lynch claimed to have felt. *See Wooten*, 400 S.W.3d at 605; *see also Herrera*, 513 S.W.3d at 225; *Griffin*, 461 S.W.3d at 192. Although Spearman and Lynch were arguing, and she allegedly threatened him, the testimony established that she did not have a weapon and that she merely yelled and refused to move out of the apartment. This would not commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, thus rendering the mind incapable of cool reflection; as such, we conclude that this is not enough to rise to the level of adequate cause. *See id.* § 19.02(a)(1); *see also McKinney*, 179 S.W.3d at 570 ("There is no evidence that the verbal taunting and physical pushing by Jeremy produced a degree of anger, rage, resentment, or terror in Appellant, sufficient to render his mind incapable of cool reflection.").

Furthermore, Lynch denied that Spearman did anything to provoke him; rather, he alleged that the demon that purportedly possessed Spearman was responsible for the provocation. Even accepting his explanation of the events, Lynch did not identify an immediate provocation by the purported demon. Lynch recounted that Spearman's expression changed, which frightened him, and that she told him to "do it." *See Moore v. State*, 694 S.W.2d 528, 530 (Tex. Crim. App. 1985) (noting that evidence of fear alone is insufficient to raise sudden passion). This does not satisfy the requirement that the

passion be "directly caused *by*" the individual killed. *See* TEX. PENAL CODE ANN. § 19.02(a)(2) (emphasis added).

In addition, Lynch testified that Spearman was possessed by a demon and was a danger to his sons the day before the offense occurred. In other words, Spearman's alleged demonic possession was not a new provocation for which a sudden-passion instruction was justified. *Id.* ("'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed . . . which *passion arises at the time of the offense and is not solely the result of former provocation*." (emphasis added)); *Hobson v. State*, 644 S.W.2d 473, 478 (Tex. Crim. App. 1983) ("Appellant argues that earlier events of the morning preceding the confrontation in the evening had created an 'emotional crisis' for this father, so concerned about his daughter's relationship with a young man just released from jail. However, if that be the passion influencing appellant, it cannot be reasonably said to be sudden—arising at the time of the offense."); *see Harper v. State*, 508 S.W.3d 461, 469 (Tex. App.—Fort Worth 2015, pet. ref'd); *cf.* TEX. PENAL CODE ANN. § 19.02(a)(1) (stating that "[a]dequate cause" is a cause that is sufficient to render the mind incapable of cool reflection).

Therefore, based on the foregoing, we cannot conclude that the trial court erred by denying Lynch's request for an instruction on sudden passion. We overrule his sole issue on appeal.

## Conclusion

We affirm the judgment of the trial court.

STEVE SMITH
Justice

Before Chief Justice Gray,
      Justice Johnson,
      and Justice Smith
Affirmed
Opinion delivered and filed January 25, 2023
Do not publish
[CRPM]

