912 F.2d 464
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roger BURNS, Defendant-Appellant.
 No. 89-5806.
 United States Court of Appeals, Fourth Circuit.
 Submitted July 12, 1990.
Decided Sept. 4, 1990.
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Clyde H. Hamilton, District Judge. (CR-89-120)
 John H. Hare, Assistant Federal Public Defender, Columbia, S.C., for appellant.
 E. Bart Daniel, United States Attorney, Eric William Ruschky, Assistant United States Attorney, Columbia, S.C., for Appellee.
 D.S.C.
 AFFIRMED.
 Before K.K. HALL and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Roger Burns appeals his conviction for assault with a dangerous weapon with intent to do bodily harm. He argues that the district court erred by not instructing the jury on two lesser-included offenses. Finding no error, we affirm.
 
 I.
 
 2
 Roger Burns was indicted in the District of South Carolina. The single count indictment alleged assault with a dangerous weapon with intent to do bodily harm occurring in the special territorial jurisdiction of the United States, in violation of 18 U.S.C. Sec. 113(c). At trial, Burns relied primarily on a theory of self-defense, although he elected not to testify and presented no evidence. For his defense, Burns relied on a statement he made to the military police that was introduced by the government.
 
 
 3
 Burns was hired as an independent contractor by Arthur Lopez, the on-site supervisor for Olympic Drywall, to do drywall finishing work on two units of a multiple family housing project located at Ft. Jackson, Columbia, South Carolina. Burns was to be paid by the unit upon completion and approval of the work by Lopez. Olympic Drywall was the drywall contractor for the project.
 
 
 4
 After Burns considered his work complete on the first unit, Lopez asked him to return several times to correct some defects. Subsequently, Burns came to Lopez to ask for his paycheck, but Lopez told Burns that he would have to do some additional work before he could be paid. The additional work would require approximately 15-30 minutes to complete. The two men drove separately to the unit.
 
 
 5
 Evidence at trial conflicted as to what happened after the men arrived at the unit. Lopez testified that when he pointed out the things that needed to be done, Burns got very upset, demanded to be paid, and refused to do any more work. Burns walked out of the unit as if he were leaving, but immediately returned with his tools. One of the tools brought in by Burns was a drywall hammer. The head of a drywall hammer has a ball on one end and a blade on the other. Burns then asked what Lopez wanted to be fixed. When Lopez began pointing out the flaws, Burns suddenly struck him in the stomach with the blunt end of the hammer and then attacked him with the blade end of the hammer. Lopez was struck in the head, though he partially deflected the blow.
 
 
 6
 Burns' version of the event differed completely. In his statement introduced by the government, Burns maintained that after he and Lopez arrived at the unit, Lopez got very angry at Burns' requests to be paid and started banging on the wall with his hard-hat. Also according to Burns' statement, Lopez left the unit and then returned, swinging the drywall hammer in a threatening manner and coming at Burns with it.
 
 
 7
 Under either version, there is no question but that a struggle occurred after one or the other left and returned with a drywall hammer. Moreover, the central focus of the struggle was control of the hammer. Ultimately, when the two stopped fighting, Lopez was bleeding badly from the head. Burns left the job site immediately, taking his drywall hammer with him, and Lopez went to seek medical treatment. Lopez suffered an abdominal injury and an inch-deep laceration of the scalp. Later that same day, Burns, who required no medical attention, went to the military police station where he gave his statement and turned in the drywall hammer.
 
 
 8
 After the close of all the evidence, Burns' counsel requested that the court include instructions for the lesser-included offenses of "assault by striking, beating, or wounding" and "simple assault." (18 U.S.C. Secs. 113(d), (e).) The court refused the additional instructions based on its finding that the evidence could not support the lesser-included offenses. Burns was convicted of assault with a dangerous weapon with intent to do bodily harm and was sentenced to 57 months imprisonment. He appeals.
 
 II.
 
 9
 On appeal, Burns contends that the district court committed reversible error by refusing to instruct the jury on the lesser included offenses. He argues that a rational jury could have disbelieved the account of the incident contained in his statement, but nonetheless could have concluded that the drywall hammer involved in the incident was not a dangerous weapon. Therefore, Burns asserts, by not accepting the dangerous weapon element, the jury could have convicted him of either "assault by striking, beating or wounding" or "simple assault." (18 U.S.C. Secs. 113(d), (e).) We are not persuaded.
 
 
 10
 The standard of review in this situation is clear. "The decision of whether there is enough evidence to justify a lesser included offense charge rests within the sound discretion of the trial judge." United States v. Chapman, 615 F.2d 1294, 1298 (10th Cir.1980). We are, therefore, limited to reviewing whether the trial court abused its discretion in refusing to give the requested instructions.
 
 
 11
 The defendant is not entitled to instructions on lesser-included offenses unless " 'the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense.' " United States v. Echeverri-Jaramillo, 777 F.2d 933, 935 (4th Cir.1985) (quoting Sansone v. United States, 380 U.S. 343, 350 (1965)). Not only must a factual element be disputed, the dispute must be presented in the evidence. Id. Moreover, evidence must be presented at trial on which the jury could base a conclusion that the defendant is innocent of the greater charge but guilty of the lesser-included offense. Keeble v. United States, 412 U.S. 208 (1973); United States v. Johnson, 637 F.2d 1224 (9th Cir.1980).
 
 
 12
 Notwithstanding defendant's contention that a rational jury could have concluded that the drywall hammer was not a dangerous weapon, no evidence was presented to the jury which could support such a conclusion. On the contrary, Burns' own statement emphasized that his concern was to get control of the hammer in order to avoid being hit by it. Furthermore, Lopez was seriously injured by the hammer even though the defendant claimed that he did not intend to hit Lopez with it. Faced with this strong evidence of the dangerousness of the hammer, the burden shifted to the defendant to come forward with enough evidence to put the issue in dispute to be entitled to an instruction on a lesser-included offense. Driscoll v. United States, 356 F.2d 324, 327 (1st Cir.1966). The defendant did not do so.
 
 
 13
 In addition to a lack of evidence to dispute the dangerousness of the hammer, there was no evidence on which the jury could base a conclusion that Burns was guilty of the lesser-included offenses. On the one hand, Burns maintained in his statement that he neither punched, kicked, nor threatened Lopez. On the other hand, Lopez's testimony, as supported by pictures of the scene, painted a picture of a deadly, bloody attack.
 
 
 14
 Based on the evidence presented at trial, we believe the trial judge did not abuse his discretion by refusing to instruct the jury on the lesser-included offenses of "assault by striking, beating, or wounding" or "simple assault." Accordingly, the conviction is affirmed.
 
 
 15
 AFFIRMED.